**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| TAMMY TURNER, | Civil Action No. 3:16-cv-000630 |
| Plaintiff, | |
| v. | Judge Jack Zouhary |
| EXPERIAN INFORMATION SOLUTIONS, INC., | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

PAGES

TABLE OF AUTHORITIES ...................................................................................ii-iv

INTRODUCTION .............................................................................................. 1

FACTUAL BACKGROUND .................................................................................. 2

    A.  Experian's Procedures ............................................................................. 2

    B.  The Relevant Correspondence ................................................................... 3

    C.  The Relevant Trade Lines ........................................................................ 4

        1.  Bank of the West, Macy's, and Kohl's ................................................ 4

        2.  Chase Auto .................................................................................. 5

        3.  Capital One .................................................................................. 6

    D.  The Alleged Emotional Distress Damages .................................................... 6

STANDARD OF REVIEW ................................................................................... 8

ARGUMENT ................................................................................................... 8

    A.  Experian Was Not Required To Conduct A Reinvestigation. ............................... 8

    B.  Experian Followed Reasonable Procedures.................................................... 11

    C.  Plaintiff Cannot Establish Any Inaccuracy, An Essential Element Of Her Claims........... 13

    D.  Plaintiff Cannot Show That Experian Caused Her Any Damages. ................................ 16

    E.  Plaintiff Cannot Establish A Willful Violation Of The FCRA........................................ 18

CONCLUSION ................................................................................................. 19

i

## <u>TABLE OF AUTHORITIES</u>

CASE                                                                                      PAGE(S)

*A-1 Credit & Assurance Co., Inc. v. Trans Union Credit Info. Co.*,
    678 F. Supp. 1147 (E.D. Pa. 1988) ...................................................................13

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 248 (1986) ...........................................................................8, 14

*Anderson v. Trans Union*,
    405 F. Supp. 2d 977 (W.D. Wis. 2005) ....................................................12, 13

*Bacharach v. Suntrust Mortg., Inc.*,
    827 F.3d 432 (5th Cir. 2016) .........................................................................17

*Birmingham v. Experian Information Solutions, Inc.*,
    633 F.3d 1006 (10th Cir. 2011) .....................................................................12

*Butler v. Sterling, Inc.*,
    210 F.3d 371 (6th Cir. 2000) .........................................................................17

*Cahlin v. General Motors Acceptance Corp.*,
    936 F.2d 1151 (11th Cir. 1991) .....................................................................13

*Carvalho v. Equifax Information Services, LLC*,
    629 F.3d 876 (9th Cir. 2010) .........................................................................13

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................................8

*DeAndrade v. Trans Union LLC*,
    523 F.3d 61 (1st Cir. 2008) ...........................................................................13

*F.T.C. v. Gill*,
    265 F.3d 944 (9th Cir. 2001) .........................................................................14

*Garrett v. Trans Union, LLC*,
    2006 WL 2850499 (S.D. Ohio Sept. 29, 2006) .......................................17, 19

*Goode v. LexisNexis Risk & Information Analytics Grp., Inc.*,
    848 F. Supp. 2d 532 (E.D. Pa. 2012) ............................................................19

*Herisko v. Bank of America*,
367 Fed. App'x 793 (9th Cir. 2010) ...............................................................15, 16

*Jackson v. Warning*,
2016 WL 7228866 (D. Md. Dec. 13, 2016)...................................................11

*Kaplan v. Experian, Inc.*,
2010 WL 2163824 (E.D. Mich. May 26, 2010)................................................17

*Keuhling v. Trans Union, LLC*,
137 Fed. App'x 904 (7th Cir. 2005) ..............................................................13

*Klotz v. Trans Union, LLC*,
246 F.R.D. 208 (E.D. Pa. 2007)....................................................................10

*Klotz v. Trans Union, LLC*,
2008 WL 2758445 (E.D. Pa. July 16, 2008)................................................10, 11

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574, 586 (1986)............................................................................8

*McKinney v. Trans Union, LLC*,
2010 WL 374103 (E.D. Mich. Jan. 25, 2010)................................................14

*Ogbon v. Beneficial Credit Servs., Inc.*,
2013 WL 1430467 (S.D.N.Y. Apr. 8, 2013)..................................................12

*Ondo v. City of Cleveland*,
795 F.3d 597 (6th Cir. 2015) .......................................................................16

*Oses v. Corelogic Saferent, LLC*,
171 F. Supp. 3d 775 (N.D. Ill. 2016) ...........................................................16

*Petty v. Equifax Information Servs., LLC*,
2010 WL 4183542 (D. Md. Oct. 25, 2010) ...............................................15-16

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47, 70 (2007)........................................................................9, 18, 19

*Salei v. Am. Express Travel Related Servs. Co., Inc.*,
134 F.3d 372 (6th Cir. 1997) ...................................................................13-14

*Sarver v. Experian Information Solutions*,
390 F.3d 969 (7th Cir. 2004) .......................................................................17

iii

*Sarver v. Experian Information Solutions, Inc.*,
    299 F. Supp. 2d 875, 877 (N.D. Ill. 2004) ............................................................................12

*Shannon v. Equifax Information Servs., LLC*,
    764 F. Supp. 2d 714 (E.D. Pa. 2011) .....................................................................................19

*Spence v. TRW, Inc.*,
    92 F.3d 380, 383 (6th Cir. 1996) ...........................................................................................12

*United States v. Nat'l Ass'n of Sec. Dealers, Inc.*,
    422 U.S. 694, 718-19 (1975) ...................................................................................................9

*Whelan v. Trans Union Credit Reporting Agency*,
    862 F. Supp. 824 (E.D.N.Y. 1994) .....................................................................................9-10

*Wickstrom v. Experian*,
    2010 WL 2651303 (W.D. Mich. July 1, 2010) .....................................................................16

*Wiggins v. Equifax Services, Inc.*,
    848 F. Supp. 213 (D.D.C. 1993) ...........................................................................................10

**STATUTES AND OTHER AUTHORITIES**

15 U.S.C. § 1681a .........................................................................................................................9

15 U.S.C. § 1681c(a) ...................................................................................................................14

15 U.S.C. § 1681e(b) ...............................................................................................................1, 12

15 U.S.C. § 1681i ..........................................................................................................................8

Federal Trade Commission,
    *40 Years of Experience with the Fair Credit Reporting Act*, 2011 WL 3020575
    (July 2011) .................................................................................................................................9

## <u>INTRODUCTION</u>

Of all the related cases pending before the Court, plaintiffs chose this one as their bellwether signifying that it was representative of the lot.  According to the Complaint, several items in Ms. Turner's Experian credit file contained inaccurate information.  On June 29, 2015, she allegedly submitted a letter to Experian disputing those items.  On July 10, 2015, she received a letter from Experian purportedly refusing to investigate her dispute.  Ms. Turner claims that this alleged refusal to reinvestigate violated 15 U.S.C. §§ 1681e(b) and 1681i of the Fair Credit Reporting Act ("FCRA").  There is one problem with this story.  None of it is true.

Ms. Turner never submitted a dispute to Experian.  Experian only received a deliberately misleading letter from Go Clean Credit—a credit repair organization—masquerading as Ms. Turner, who never even saw the letter before it was sent.  Without performing due diligence to determine whether any of Ms. Turner's credit accounts legitimately could be disputed, Go Clean Credit simply challenged, *en masse*, the accuracy of nearly every negative item in her credit file.  Go Clean Credit had no evidence to substantiate the claims it made, and there is none.  Every item Go Clean Credit purported to dispute was accurate.

After receiving the letter at issue, Experian determined—correctly—that it was not sent by Ms. Turner.  So, Experian sent a letter to Ms. Turner—not refusing to reinvestigate, but asking that she contact Experian directly to verify that she wished to make a dispute.  She ignored that request.

As demonstrated below, Experian's motion for summary judgment should be granted for five reasons.  <u>First</u>, Experian had no obligation to conduct a reinvestigation under these circumstances.  <u>Second</u>, Experian followed reasonable procedures.  <u>Third</u>, there is no evidence that Experian reported inaccurate information.  <u>Fourth</u>, there is no evidence that Experian's

actions damaged Ms. Turner.  Fifth, under controlling Supreme Court precedent, the cause of

action for a willful violation of the FCRA fails as a matter of law.

## FACTUAL BACKGROUND

### A.    Experian's Procedures

Experian is a consumer reporting agency ("CRA").  (Joint Statement of Undisputed

Material Facts ("JSF") ¶ 1.)  It does not originate or create any credit information.  (Declaration

of Mary Methvin ("Methvin Decl.") ¶ 4, attached as Ex. 1.)  Rather, it stores data supplied by

furnishers who engage in credit transactions with consumers.  (*Id.*)  Furnishers report trade lines

to Experian consisting of individual credit account data such as account number, status, and

balance as well as certain identifying information used to match particular accounts to the

appropriate consumer.  (*Id.*)  Experian provides a consumer's credit information only upon

request and only to the consumer or to subscribers authorized by law to receive it.  (*Id.* ¶ 5.)

Experian has developed extensive procedures designed to assure the maximum possible

accuracy of the credit information that it reports.  (*Id.* ¶¶ 6-15.)  For example, it provides

consumers with easy and secure access to their consumer disclosures and multiple means to

dispute items in their credit files.  (*Id.* ¶ 9.)  Consumers can initiate a dispute free of charge by

telephone, by mail, by visiting Experian's secure website, or in person at an Experian Personal

Visit Office.  (*Id.*)

When Experian receives a dispute from a consumer, it typically conducts a

reinvestigation by contacting the furnisher who was the source of the information, describing the

nature of the dispute, and requesting that the furnisher verify or modify the information as

appropriate.  (*Id.* ¶¶ 10-12.)  Experian then sends the consumer a summary reflecting the results

of the reinvestigation and describing the options available if the consumer disagrees with those

results.  (*Id.* ¶ 13.)  Given its obligation to safeguard consumers' confidential credit information,

Experian must be reasonably sure that the correspondence it receives actually comes from the consumer whose credit information is involved.  (*Id.* ¶¶ 16-17.)

## B.      The Relevant Correspondence

On July 6, 2015, Experian received a letter dated June 29, 2015, that purportedly was sent by Ms. Turner (the "Letter").  (JSF ¶¶ 12-13.)  The Letter displayed certain characteristics indicating that it was not sent by Ms. Turner.  (*See id.* ¶¶ 29-32.)

On July 10, 2015, Experian mailed a response letter to Ms. Turner (the "Response"), notifying her that "[Experian] received a suspicious request in the mail regarding your personal credit report and determined that it was not sent by you."  (*Id.* ¶¶ 25-26.)  Experian did not refuse to conduct a reinvestigation.  (*Id.* ¶¶ 26-27.)  Instead, Experian requested that Ms. Turner contact it directly, either by telephone or via the Internet, to confirm that she had sent the Letter and to make a dispute if she wished to do so.  (*Id.*)  Ms. Turner did not contact Experian after receiving the Response, even though she admits she could have done so.  (*Id.* at 28.)

The Letter, in fact, was not sent by Ms. Turner.  It was sent by a "credit repair organization" called Go Clean Credit.  Go Clean Credit drafted the Letter.  (*Id.* ¶¶ 3, 19.)  Go Clean Credit chose which trade lines to dispute in the Letter and why to dispute them.  (*Id.* ¶ 20.)  And Go Clean Credit mailed the Letter to Experian.  (*Id.* ¶ 21.)

Ms. Turner did not draft the Letter or choose the language used in it.  (JSF ¶¶ 14-15.)  She did not personally sign the Letter.  (*Id.* ¶ 16.)  The Letter contains an electronic signature, part of which is cut off at the bottom; Ms. Turner did not place her electronic signature on the Letter.  (*Id.* ¶ 17.)  Nor did she mail the Letter to Experian.  (*Id.* ¶ 18.)  In fact, Ms. Turner never even saw the Letter before Go Clean Credit sent it to Experian.  (*Id.* ¶ 22.)

Go Clean Credit had no documentation to corroborate the claims it made in the Letter, and the Letter included no attachments to substantiate those claims.  (*Id.* ¶¶ 23-24.)  All Go

Clean Credit had was a copy of Ms. Turner's credit report—obtained from a third party—which reflected the credit data and scores being reported by Experian, Equifax, and Trans Union as of June 17, 2015.  (*Id.* ¶ 7.)  Indeed, Go Clean Credit was not able—and did not try—to determine whether the disputed accounts were being reported inaccurately.  (Svendsen Dep. 63:9-22.)

Go Clean Credit simply "flagged each derogatory account on the report," and followed its normal practice of disputing derogatory accounts with late payments "as a matter of course," with no regard to whether the derogatory information was accurate.  (JSF ¶¶ 9, 57.)  It then inundated all three major CRAs and Ms. Turner's creditors with dozens of letters purporting to dispute the same accounts but for different reasons in an effort to make "something stick."  (*Id.* ¶ 58-59; *see also* Svendsen Dep. 79:13-16, 81:3-82:8.)  Go Clean Credit charged Ms. Turner $793 to perform these "credit repair services."  (Turner Dep. 42:4-19.)

## C.  The Relevant Trade Lines

The Letter stated that nine derogatory accounts in Ms. Turner's credit file contained inaccurate information.  (JSF ¶ 33.)  That was not true.  One account—a CBNA charge card—is not even mentioned in the Complaint.  Ms. Turner admits that Experian accurately reported the status of that account.  (*Id.* ¶ 35.)  Two other accounts—a Chase credit card and a Comenity Bank charge card—are referenced in the Complaint, but Ms. Turner now concedes that Experian accurately reported the status of those accounts.  (*Id.* ¶ 36.)  Of the six remaining accounts, there is no evidence that Experian reported inaccurate information regarding any of them.

### 1.  Bank of the West, Macy's, and Kohl's

The Letter claimed that Experian was inaccurately reporting "late payments" on Ms. Turner's Bank of the West, Macy's, and Kohl's accounts.  (*Id.* ¶¶ 37-38.)  Ms. Turner has no documentation to support that claim.  (*Id.* ¶ 41.)  She merely testified:  "I *don't recall* ever being late with a payment."  (*Id.* ¶ 39 (emphasis added).)  However, she also testified:

Q:     You don't deny that you may have been late on payments to a creditor before, you just don't recall as you sit here today, true?

A:     Correct.

(*Id.* ¶ 40.)

Justin Svendsen is a Senior Credit Specialist at Go Clean Credit who conducted an initial credit consultation with Ms. Turner a few days before the Letter was sent.  (*Id.* ¶ 8.)  When asked what evidence he had that Ms. Turner had never been late in making payments to Bank of the West, Macy's, and Kohl's, Mr. Svendsen stated:  "None."  (*Id.* ¶ 42.)  In fact, Go Clean Credit sent "Goodwill Requests" to each of those creditors.  (*Id.* ¶ 43.)  The purpose of such requests is to ask the creditor to remove derogatory information as a "courtesy" or "forgive" the default "even though the information may be accurate."  (*Id.* ¶¶ 44-45.)

Between July and December of 2015, Trans Union, Equifax, and/or Experian reinvestigated the Bank of the West account fifteen times, the Macy's account six times, and the Kohl's account six times.  (Methvin Decl. ¶¶ 25-27, 29, 32-33, 36-37.)  Each time, the furnishers confirmed the accuracy of the late payments they were reporting.  (*Id.*)  In addition, Experian received, unsolicited, a direct communication from Bank of the West in September 2015 confirming the accuracy of the late payments it was reporting.  (*Id.* ¶ 28.)  And, Kohl's sent a letter directly to Ms. Turner that same month informing her that "the information that was furnished to the credit reporting agencies is accurate."  (JSF ¶ 46.)

## 2.     Chase Auto

According to the Letter, Experian was inaccurately reporting "obsolete information" on the Chase Auto account.  (JSF ¶ 48.)  But CRAs are permitted to report accurate derogatory information, including late payments, for seven years.  (*Id.* ¶ 49.)  Ms. Turner was 30 days past due on this account two separate times—in July 2009 and August 2009.  (Methvin Decl. ¶ 39.)

Hence, Experian was permitted to report the July 2009 and August 2009 late payments until July 2016 and August 2016, respectively.[1]  Consequently, Mr. Svendsen admitted that when Experian reported those delinquencies in June 2015 the information was "not obsolete."  (JSF ¶ 50.)

### 3.    Capital One

With respect to the two Capital One accounts, the claims in the Letter were vague.  (*Id.* ¶ 52.)  The Complaint alleges that Ms. Turner "did not recognize these items on her credit report." (Compl. ¶ 5.)  But she now admits that the Capital One accounts are hers.  (JSF ¶ 55.)

At deposition, Ms. Turner tried to raise a new issue by challenging the late payments associated with those accounts.  Both she and Mr. Svendsen conceded, however, that the Letter sent by Go Clean Credit—the only piece of correspondence Ms. Turner relies on to support her claims—did not dispute the accuracy of the late payments Experian reported.  (*Id.* ¶ 54.)

Regardless, Ms. Turner has no documentation to show that she was not late in making payments on those accounts.  (*Id.* ¶ 23.)  She merely testified:  "I *don't believe* I was late on a payment to them."  (*Id.* ¶ 53 (emphasis added).)  And when asked what evidence he had that Experian reported inaccurate information regarding the Capital One accounts, Mr. Svendsen stated:  "None."  (*Id.* ¶ 56.)

Experian ultimately reinvestigated both Capital One accounts three times—in October 2015, November 2015, and December 2015.  (Methvin Decl. ¶¶ 43-44, 46-47.)  Each time, Capital One confirmed the accuracy of the late payments it was reporting to Experian.  (*Id.*)

### D.    The Alleged Emotional Distress Damages

Ms. Turner did not incur and does not claim damages for any actual monetary or

---

[1] Experian removed the late payments associated with the Chase Auto account prior to those times and is currently reporting the account with a positive status.  (Methvin Decl. ¶ 41.)

out-of-pocket losses.  (JSF ¶ 61.)  She was not denied credit at any time between July 2015 and the present due to information appearing on her Experian credit report.  (*Id.* ¶ 60.)  She only claims "actual damages in the forms of emotional distress, mental anguish, suffering, humiliation and embarrassment."  (*Id.* ¶ 62.)

The alleged emotional distress resulted from a conversation Ms. Turner had with a mortgage broker.  Sometime in early 2015, Ms. Turner and her husband met with a broker whose name she does not recall.  (Turner Dep. 108:22-109:8, 115:17-23.)  No one else was present for the conversation.  (*Id.* 115:24-116:4.)  Ms. Turner testified that she "was advised by the mortgage broker that it would be challenging to obtain a mortgage."  (*Id.* 107:3-6, 112:7-113:10.)

Not only did that alleged conversation occur *before* Go Clean Credit sent the Letter to Experian, but there also is no evidence that the mortgage broker was referring to or had even seen Ms. Turner's Experian credit report.[2]  What *is* clear is that, in May 2010, Wells Fargo foreclosed on a home owned by Ms. Turner.  (JSF ¶ 63.)  That foreclosure was reported by Experian, Equifax, and Trans Union; Ms. Turner does not contest the accuracy of the reported foreclosure.  (*Id.*)  On this point, Mr. Svendsen aptly testified:

> Q:    Given your experience working in the credit repair industry now for a year and a half, when someone has a prior foreclosure on their credit report, it makes buying a home more challenging; isn't that true?
>
> A:    Yes.

(Svendsen Dep. 23:9-13.)  Ms. Turner and her husband ultimately applied for a home loan, and their application was approved.  (Turner Dep. 108:14-21, 109:9-110:2.)

---

[2] As of June 2015, compared to Equifax and Trans Union, Ms. Turner's highest credit score was with Experian.  (Svendsen Dep. 35:9-36:1.)

## STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. A "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Thus, the moving party's initial burden is satisfied by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The nonmoving party may not then rest upon the allegations in its pleadings, but must present "concrete" and "affirmative" evidence through "specific facts" to support its claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 256-57 (1986). Evidence that is "merely colorable" or "not significantly probative," *id.* at 249-50, or that simply casts "some metaphysical doubt as to the material facts" is insufficient to overcome summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## ARGUMENT

### A.   Experian Was Not Required To Conduct A Reinvestigation.

The FCRA does not require Experian to conduct a reinvestigation of items that are disputed by a third party, such as a credit repair organization. Reinvestigations are governed by 15 U.S.C. § 1681i. The statute provides:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed *by the consumer* and *the consumer notifies the agency directly*, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate . . . .

8

15 U.S.C. § 1681i(a)(1)(A) (emphasis added).[3]  Thus, two prerequisites are necessary to trigger a

CRA's reinvestigation duty:  a dispute must be made "by the consumer" who must convey it

"directly" to the CRA.  Neither prerequisite was satisfied here.

First, the dispute at issue was not made "by" Ms. Turner.  Go Clean Credit drafted the

Letter.  It chose which accounts to dispute and why to dispute them.  Ms. Turner had no role in

drafting the Letter.  She did not personally sign it.  She did not even see the Letter before Go

Clean Credit sent it to Experian.  Second, Ms. Turner did not notify Experian "directly" of any

dispute.  She did not send the Letter to Experian, Go Clean Credit did.

For 40 years, the Federal Trade Commission ("FTC") was tasked with enforcing and

administering the FCRA.  In July 2011, the FTC issued a staff report summarizing its

interpretations.  With respect to § 1681i(a), the FTC gave the following guidance:

> A CRA need not investigate a dispute about a consumer's file raised by a third
> party—such as a "credit repair organization" defined in 15 U.S.C. § 1679a(3)—
> because the obligation under this section arises only where file information is
> disputed "by the consumer" who notifies the agency "directly" of such dispute.

Federal Trade Commission, *40 Years of Experience with the Fair Credit Reporting Act: An FTC*

*Staff Report with Summary of Interpretations*, 2011 WL 3020575, at *70 (July 2011).  Although

interpretations in agency staff reports are not controlling, they are "entitled to considerable

weight," *United States v. Nat'l Ass'n of Sec. Dealers, Inc.*, 422 U.S. 694, 718-19 (1975), and the

Supreme Court has referred to FTC interpretations of the FCRA as "authoritative guidance."

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 (2007).

Consistent with the FTC's interpretation, district courts have granted summary judgment

to CRAs based on similar facts.  In *Whelan v. Trans Union Credit Reporting Agency*, 862 F.

---

[3] Go Clean Credit is not a "consumer" as defined in 15 U.S.C. § 1681a(c).  (JSF ¶ 4.)
Nor is it a "reseller" as defined in 15 U.S.C. § 1681a(u).  (*Id.* ¶ 5.)

Supp. 824 (E.D.N.Y. 1994), two plaintiffs, a husband and wife, discovered derogatory information on their credit reports that they believed was inaccurate.  They contacted the furnisher to complain.  Although there was some evidence that the furnisher may have contacted the CRAs, it was undisputed that the plaintiffs never contacted the CRAs to make a dispute.  *Id.* at 827-28.  As a result, the court concluded that their claims under § 1681i(a) "can be disposed of readily." *Id.* at 833.  The "FCRA requires that the information be conveyed *by the consumer* directly to the credit reporting agency." *Id.*  Because plaintiffs "conceded that they failed to contact [the CRAs] directly to convey to them the dispute regarding the accuracy of the information on their credit reports," the CRAs were entitled to summary judgment. *Id.*[4]

Likewise, in *Klotz v. Trans Union, LLC*, No. 05-4580, 2008 WL 2758445 (E.D. Pa. July 16, 2008), a credit repair organization prepared letters disputing various items in the plaintiff's credit file.  The credit clinic decided "what was to be disputed" and "the basis for the dispute." *Id.* at *5.  The plaintiff merely took the "pre-drafted disputes," signed the letters, and sent them to Trans Union. *Id.* at *2-3.  Trans Union declined to conduct a reinvestigation, but informed the plaintiff that it would do so if he "submitted a dispute directly." *Id.* at *1-2.  The plaintiff sued, alleging that Trans Union's failure to reinvestigate was a willful violation of the FCRA.

The court granted Trans Union's motion for summary judgment, reasoning that "[t]o prevail on a section 1681i claim, the plaintiff must prove that the disputes were 'by' him and that he notified the defendant 'directly' of the disputes." *Id.* at *4.  "Under the plain text of section

---

[4] *See also Klotz v. Trans Union, LLC*, 246 F.R.D. 208 (E.D. Pa. 2007) (reasoning that the "statute requires a CRA to investigate a disputed item only if the dispute is conveyed 'directly' by the consumer" and "[i]f the dispute is not conveyed to the CRA 'directly,' a claim under section 1681i will fail"); *Wiggins v. Equifax Services, Inc.*, 848 F. Supp. 213, 220 & n.9 (D.D.C. 1993) (finding genuine issue as to whether consumer complained "directly" to CRA, "a requirement for liability under § 1681i(a)").

1681i(a)(1)(A), a CRA has no obligation to reinvestigate unless an item is disputed 'by the consumer,' and the consumer 'notifies the agency directly of the dispute.'"  *Id.*  Based on the facts before it, the court concluded that the items at issue "were not 'disputed by' the plaintiff." *Id.* at *5.  Thus, "Trans Union did not owe the plaintiff a duty to reinvestigate" and his "claim under 1681i(a)(1)(A) fail[ed]."  *Id.*[5]

The result should be no different in this case.  Indeed, the grounds for granting summary judgment here are even stronger than they were in *Klotz*.  At least in that case, the consumer personally signed and mailed the letters involved.  In contrast, Ms. Turner not only had no role in preparing the Letter, but she also did not personally sign or mail it.  She did not even see the Letter before Go Clean Credit mailed it to Experian.  Given these undisputed facts and the plain language of the statute, Ms. Turner's claim under § 1681i necessarily fails.

**B.      Experian Followed Reasonable Procedures.**

Ms. Turner's claim under § 1681e(b) also fails because it has no independent foundation. According to her response to Interrogatory No. 13, the underlying basis for both claims is the *same*:  "Defendant willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information that it reported regarding Plaintiff, by maintaining procedures which lead [sic] to Defendant's failure to conduct a reasonable investigation of Plaintiff's dispute."  (Pl.'s Resp. to Interrog., attached as Ex. 2.)  Ms. Turner simply bootstrapped her reasonable procedures claim to her failure to reinvestigate claim.

---

[5] *See also Jackson v. Warning*, No. 15-1233, 2016 WL 7228866, at *8 n.9 (D. Md. Dec. 13, 2016) (reasoning that "[d]isputing an inaccuracy with a furnisher is not enough"; "[e]ven if the CRA is informed of the dispute by the furnisher, the FCRA requires that the information be conveyed *by the consumer* directly to the credit reporting agency").

Even if that were not the case, the § 1681e(b) claim independently fails because Experian's conduct was reasonable. While a CRA must maintain "reasonable procedures to assure maximum possible accuracy of the information" it reports, 15 U.S.C. § 1681e(b), it also must adopt "reasonable procedures" to ensure the "confidentiality" of that information. 15 U.S.C. § 1681e(b). In seeking to accomplish these dual objectives, a CRA "is held only to a duty of reasonable care," which is "determined by reference to what a reasonably prudent person would do under the circumstances." *Spence v. TRW, Inc.*, 92 F.3d 380, 383 (6th Cir. 1996).

When Experian received the Letter on July 6, 2015, it determined—correctly—that the Letter was not sent by Ms. Turner. Because the reinvestigation process requires Experian to transmit confidential information to third parties, Experian acted promptly but with caution. It sent the Response on July 10, 2015, asking Ms. Turner to confirm that she had sent the Letter and verify that she wished to make a dispute.

It was both "reasonable" and "appropriate" for Experian to request additional information "to be sure it was being contacted by the consumer [herself]." *Birmingham v. Experian Information Solutions, Inc.*, 633 F.3d 1006, 1012 (10th Cir. 2011) (affirming grant of summary judgment to Experian); *see also Ogbon v. Beneficial Credit Servs., Inc.*, No. 10-3760, 2013 WL 1430467, at *8 (S.D.N.Y. Apr. 8, 2013) (finding it "entirely reasonable" to request additional identifying information before processing dispute and granting summary judgment to Experian); *Anderson v. Trans Union*, 405 F. Supp. 2d 977, 984 (W.D. Wis. 2005) (finding it "both reasonable and prudent" to verify identifying information before processing dispute and granting summary judgment to Trans Union); *Sarver v. Experian Information Solutions, Inc.*, 299 F. Supp. 2d 875, 877 (N.D. Ill. 2004) (finding it "reasonable" to request additional information about consumer before processing dispute and granting summary judgment to Experian). And a

CRA "is certainly entitled to protect itself against claims of improper disclosure by . . . only dealing with the particular consumer." *A-1 Credit & Assurance Co., Inc. v. Trans Union Credit Info. Co.*, 678 F. Supp. 1147, 1151 (E.D. Pa. 1988) (stating that a CRA "is under no obligation to recognize [a credit repair business] as the consumer's agent").

Moreover, Ms. Turner's claims rest upon a false premise. Her central allegation was that "Experian refused to investigate." (Compl. ¶ 10.) But she now concedes that Experian did not refuse to conduct a reinvestigation. Experian simply requested that Ms. Turner contact it directly to verify her identity and confirm that she wished to make a dispute. She admits that she could have done so, but she chose not to. If there was any unreasonable conduct here, it was Ms. Turner's failure to respond to Experian's inquiry. *See Anderson*, 405 F. Supp. 2d at 984 (stating that the only "unreasonable action" was plaintiff's failure to confirm his identifying information in response to CRA's request). There was nothing unreasonable about Experian's actions.

## C.    Plaintiff Cannot Establish Any Inaccuracy, An Essential Element Of Her Claims.

Aside from the arguments presented above, Ms. Turner's claims fail for a separate and fundamental reason—each trade line that Go Clean Credit purported to dispute was *accurate*.

"A showing of inaccuracy is an essential element of a claim under [§ 1681e(b)]." *Spence*, 92 F.3d at 382. The majority of circuit courts to address this issue also have held that a plaintiff must show an inaccuracy to succeed on a claim under § 1681i. *Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876, 890 (9th Cir. 2010); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 66-67 (1st Cir. 2008); *Keuhling v. Trans Union, LLC*, 137 Fed. App'x 904, 908 (7th Cir. 2005); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). While the Sixth Circuit has not squarely addressed that question, it has reasoned that, even if a showing of inaccuracy were not a predicate to liability under § 1681i, "damages would be almost impossible to prove without it." *Salei v. Am. Express Travel Related Servs. Co., Inc.*, 134 F.3d

372, at *3 (6th Cir. 1997) (unpublished table decision). Thus, district courts in this circuit have followed the majority rule. *E.g.*, *McKinney v. Trans Union, LLC*, No. 09-11947, 2010 WL 374103, at *3-4 (E.D. Mich. Jan. 25, 2010) (granting summary judgment to CRA and holding that a violation of § 1681i "does not exist if an inaccuracy cannot be shown to exist").

There is no evidence of any inaccuracy in this case. None.

To begin with, Go Clean Credit claimed that by reporting, in July 2015, a July 2009 late payment on Ms. Turner's Chase Auto account, Experian was inaccurately reporting "obsolete" information. Yet, "negative information can remain on a report for up to seven years"; only "[o]lder items" are considered "'obsolete.'" *F.T.C. v. Gill*, 265 F.3d 944, 948 (9th Cir. 2001); 15 U.S.C. § 1681c(a). Faced with these facts, Mr. Svendsen readily admitted that the information Experian reported on the Chase Auto account was not obsolete. (JSF ¶ 50.)

Next, Go Clean Credit claimed that Experian inaccurately reported "late payments" on Ms. Turner's Bank of the West, Macy's, and Kohl's accounts. It had no evidence to support these accusations. Nor does Ms. Turner have any documentation to show that she was not late in making payments on those accounts. All she could say was: "I *don't recall* ever being late with a payment." (*Id.* ¶ 39 (emphasis added).) But her lack of recollection is not evidence that she was never late, only that she could not recall it. Significantly, she also testified:

> Q:    You don't deny that you may have been late on payments to a creditor before, you just don't recall as you sit here today, true?
>
> A:    Correct.

(*Id.* ¶ 40.) Her testimony falls well short of the "concrete" and "affirmative" evidence necessary to survive summary judgment. *Liberty Lobby, Inc.*, 477 U.S. at 248, 256-57.

In contrast, there is ample evidence in the record that the late payments Experian reported regarding the Bank of the West, Macy's, and Kohl's accounts were accurate. Go Clean Credit

14

sent "Goodwill Requests" to each of those creditors asking them to "forgive" the defaults as a

"courtesy." (JSF ¶¶ 43-45.) The only reasonable inference that can be drawn from that conduct

is that the late payments reported by the furnishers were accurate. More important, Trans Union,

Equifax, and/or Experian ultimately reinvestigated the Bank of the West account fifteen times,

the Macy's account six times, and the Kohl's account six times. Each time, the furnishers

confirmed the accuracy of the late payments they were reporting. That is in addition to the direct

communications Experian received from Bank of the West and Ms. Turner received from Kohl's

confirming the accuracy of the late payments they were reporting.

Finally, with respect to the two Capital One accounts, Go Clean Credit's claims were

indecipherable. The sole allegation in the Complaint is that Ms. Turner "did not recognize these

items on her credit report." (Compl. ¶ 5.) She now admits that the Capital One accounts are

hers. Perhaps recognizing this inconsistency, Ms. Turner attempted to raise a new issue at her

deposition by challenging the late payments associated with those accounts. It is undisputed,

however, that the Letter sent by Go Clean Credit did not dispute the accuracy of the late

payments Experian reported. That is a fatal fact.

"In order to trigger a credit reporting agency's duty under the FCRA to investigate a

claim of inaccurate information, a consumer must notify the agency of the purported reporting

error." *Herisko v. Bank of America*, 367 Fed. App'x 793, 794 (9th Cir. 2010) (affirming grant of

summary judgment because "letter did not put Experian on notice that Plaintiff was claiming a

different purported inaccuracy"). As one district court aptly reasoned:

> The statute requires that a consumer notify a CRA of the existence and nature of a
> dispute for an obvious reason: Without notice of a consumer's dispute, including
> an explanation of why the consumer believes his or her report is inaccurate or
> incomplete, a CRA generally would not know what information to reinvestigate,
> how to reinvestigate it, or whether upon reinvestigation the information is indeed
> inaccurate or incomplete. Thus, if a consumer later sues a CRA for a violation of

its reinvestigation duty under § 1681i(a), he or she may only sue based on alleged violations of which the consumer provided notice to the CRA.  If the consumer raises additional alleged violations in his or her lawsuit for which the consumer had not previously provided notice of the dispute to the CRA, those claims must be dismissed.

*Petty v. Equifax Information Servs., LLC*, No. 10-694, 2010 WL 4183542, at *3 (D. Md. Oct. 25, 2010) (granting motion to dismiss and describing alleged incompleteness as "irrelevant" because plaintiff never notified the CRAs about it); *Oses v. Corelogic Saferent, LLC*, 171 F. Supp. 3d 775, 782 (N.D. Ill. 2016) (granting summary judgment because CRA was not required to reinvestigate "inaccuracies plaintiff himself had not identified"); *Wickstrom v. Experian*, No. 1:09-cv-591, 2010 WL 2651303, at *5 (W.D. Mich. July 1, 2010) (granting summary judgment because plaintiff disputed a "single issue" and failed to "provide notice to defendant that he was claiming that there were other inaccuracies").  Simply put, even if the Letter sent by Go Clean Credit was a legitimate dispute—and it was not—Experian had no obligation to reinvestigate items that were not raised in the Letter.  *Herisko*, 367 Fed. App'x at 794.

Regardless, Experian ultimately reinvestigated both Capital One accounts three times—in October, November, and December of 2015.  Each time, Capital One confirmed the accuracy of the late payments it was reporting to Experian.  Ms. Turner has no evidence to contradict those facts.  The best she could do was say:  "I *don't believe* I was late on a payment to them."  (JSF ¶ 53 (emphasis added).)  But the Sixth Circuit has made clear that statements based on mere "belief" do not demonstrate personal knowledge "and as such cannot be regarded as evidence giving rise to a genuine issue of material fact under Federal Rule of Civil Procedure 56 to defeat summary judgment."  *Ondo v. City of Cleveland*, 795 F.3d 597, 604-05 (6th Cir. 2015).

**D.    Plaintiff Cannot Show That Experian Caused Her Any Damages.**

There is yet another independent reason why Ms. Turner's claims should be dismissed— she suffered no cognizable damages.  To recover actual damages, a plaintiff must show that a

violation of the FCRA "caused the loss of credit or some other harm." *Kaplan v. Experian, Inc.*, No. 09-10047, 2010 WL 2163824, at *4 (E.D. Mich. May 26, 2010). Ms. Turner admits that she did not incur any actual monetary or out-of-pocket losses. She also concedes that she was not denied credit due to information appearing on her Experian credit report. She only claims "other harm" in the form of alleged emotional distress damages.

The Sixth Circuit has observed that emotional distress damages only are "recoverable in extreme cases." *Butler v. Sterling, Inc.*, 210 F.3d 371, at *8 (6th Cir. 2000) (unpublished table decision). Courts should be wary of "creative claim[s] of emotional distress," *id.* at *9, and have imposed a "strict standard" for their recovery "because they are so easy to manufacture." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 971 (7th Cir. 2004). Such claims require "a 'degree of specificity' and 'must be supported by evidence of genuine injury,' such as 'the observations of others,' 'corroborating testimony,' or 'medical or psychological evidence.'" *Bacharach v. Suntrust Mortg., Inc.*, 827 F.3d 432, 436 (5th Cir. 2016). There also must be evidence that the alleged emotional distress was "proximately caused" by inaccurate information reported by the CRA. *Garrett v. Trans Union, LLC*, No. 2:04-cv-00582, 2006 WL 2850499, at *11 (S.D. Ohio Sept. 29, 2006). There is no such evidence here.

Ms. Turner's alleged emotional distress resulted from a conversation she had with an unnamed mortgage broker who advised her "that it would be challenging to obtain a mortgage." (*Supra*, p. 7.) Besides her husband, no one else was present for the conversation. The conversation occurred in early 2015, months *before* Go Clean Credit sent the Letter to Experian purporting to dispute the accuracy of items in Ms. Turner's credit file. There is no evidence that the broker was referring to Ms. Turner's Experian credit report when he made his comment. Indeed, there is no evidence that the broker had even seen Ms. Turner's Experian credit report.

What *is* clear is that, in May 2010, Wells Fargo foreclosed on a home owned by Ms. Turner. That foreclosure was reported by Experian, Equifax, and Trans Union. Ms. Turner does not contest the accuracy of the reported foreclosure. Plainly, having a prior foreclosure makes buying a home more challenging. Nonetheless, Ms. Turner and her husband ultimately applied for a home loan and their application was approved.

Even if she did suffer emotional distress, Ms. Turner cannot show causation. She cannot show that Experian reported any inaccurate information. She cannot show that the information in her Experian credit report resulted in a denial of credit. And to the extent it was challenging for her to obtain a home loan, she cannot show that her difficulty was caused by any of the alleged inaccuracies at issue—most of which also were reported by Trans Union and Equifax— rather than the prior foreclosure she does not dispute.

**E.    Plaintiff Cannot Establish A Willful Violation Of The FCRA.**

Ms. Turner's claim that Experian willfully violated the FCRA boils down to the bare contention that it was improper for Experian to classify Go Clean Credit's Letter as suspicious mail and request that Ms. Turner contact Experian directly to confirm that she sought to submit a dispute. This claim is meritless.

The Supreme Court has explained that the "phrase 'willfully fails to comply' in § 1681n(a)" denotes "reckless FCRA violations." *Safeco*, 551 U.S. at 57. Under an "objective standard," reckless actions are those involving "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 68. Yet, a CRA "does not act in reckless disregard of [the FCRA] unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. Even an "erroneous" reading of the statute is not necessarily "objectively unreasonable." *Id.*

The suspicious mail policy that Experian applied in this case was based upon a reasonable interpretation of the FCRA that is squarely in accord with the FTC's interpretation of the statute as well as applicable case law like the decisions in *Whelan* and *Klotz*.  Thus, Experian cannot be held liable for a willful violation of the FCRA as a matter of law.  In *Safeco*, the Supreme Court held:

> [Even if] the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator.  Congress could not have intended such a result for those who followed an interpretation that could reasonably have found support in the courts, whatever their subjective intent may have been.

*Id.* at 70 n.20; *see also Goode v. LexisNexis Risk & Information Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 543 (E.D. Pa. 2012) (holding that interpretation supported by case law and "FTC Staff Report" was not "objectively unreasonable"); *Shannon v. Equifax Information Servs., LLC*, 764 F. Supp. 2d 714, 726-26 (E.D. Pa. 2011) (holding that approach "upheld as a matter of law by other courts" could not be construed as reckless conduct); *cf. Garrett*, 2006 WL 2850499, at *16 (holding that a "[f]ailure to adequately re-investigate or promptly correct or delete information after notice does not constitute willfulness").

## CONCLUSION

For the foregoing reasons, Experian respectfully requests that the Court enter summary judgment in its favor and dismiss Plaintiff's claims.

Dated: February 6, 2017               Respectfully submitted,

s/ *Christopher M. McLaughlin*

Christopher M. McLaughlin  (0078186)
E-mail:  cmmclaughlin@jonesday.com
Emmett E. Robinson  (0088537)
E-mail:  erobinson@jonesday.com
JONES DAY
North Point, 901 Lakeside Avenue
Cleveland, OH  44114-1190
Telephone:  216-586-3939
Facsimile:  216-579-0212

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2017, a copy of the foregoing Defendant's Memorandum in Support of Motion for Summary Judgment was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.


s/ *Christopher M. McLaughlin*
Attorney for Defendant
Experian Information Solutions, Inc.