IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Tammy Turner, | Case No. 3:16 CV 630 |
| Plaintiff, | MEMORANDUM <u>OPINION AND ORDER</u> |
| -vs- | JUDGE JACK ZOUHARY |
| Experian Information Solutions, Inc., | |
| Defendant. | |

**INTRODUCTION**

Tammy Turner sues Experian for violations of the Fair Credit Reporting Act (FCRA) under 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i. Turner claims she suffered emotional distress due to an inaccuracy in her credit report caused by Experian's unreasonable procedures. This case was selected by counsel as a bellwether case for nearly twenty similar lawsuits challenging Experian's "suspicious mail" policy (*see* Doc. 10). Both parties move for summary judgment (Docs. 28, 30). The Motions are fully briefed (Docs 21, 31, 33).

**UNDISPUTED MATERIAL FACTS**

Experian is a consumer reporting agency (CRA) (Doc. 21 at ¶ 2). It does not create credit information, but rather assembles and stores data supplied by "furnishers" who engage in transactions with consumers. Experian then prepares consumer credit reports and provides them to appropriate third parties. *See* 15 U.S.C. § 1681a(f).

Tammy Turner is a consumer (Doc. 21 at ¶ 1). In June 2015, she hired Go Clean Credit, a credit repair organization (CRO), to help clean up her credit report (*id.* at ¶¶ 3, 6, 11). Go Clean Credit flagged nine derogatory accounts on Turner's credit report, including CBNA, Bank of the

West, Macy's, Kohl's, Chase, Chase Auto, Comenity Bank, and two Capital One accounts (*id.* at ¶ 34). Go Clean Credit then drafted a letter disputing all nine derogatory accounts and mailed it to Experian (*id.* at ¶¶ 19, 20, 21). Turner did not write, review, or sign the letter (*id.* at ¶¶ 14, 16, 22).

Of the nine accounts identified in the dispute letter, Turner no longer disputes the accuracy of the CBNA charge card (which was not included in her Complaint), Chase credit card, or Comenity Bank accounts (*id.* at ¶¶ 35, 36). The dispute letter claimed Experian inaccurately reported "obsolete information" on the Chase Auto loan -- specifically, a late payment in July 2009 (*id.* at ¶ 48). The dispute letter also claimed Experian inaccurately reported "late payments" on the Bank of the West, Macy's, and Kohl's accounts (*id.* at ¶ 38). Turner testified she did not "recall ever being late with a payment" on those accounts but offers no documentation to support this recollection (*id.* at ¶¶ 39, 40, 41). In fact, when Go Clean Credit contacted Kohl's directly, Kohl's responded that the information reported was accurate (*id.* at ¶ 46). Similarly, the dispute letter claimed Experian inaccurately reported information on two Capital One accounts because Turner "[had] no recollection of this information" (*id.* at ¶ 52). In response to a discovery interrogatory, Turner reiterated that "she did not recognize these items on her credit report" (*id.*). She later testified that the Capital One accounts were her accounts, but she did not believe she made any late payments on them (*id.* at ¶¶ 53, 55).

Experian funnels all incoming mail to its processing center for sorting (*id.* at ¶ 29). Experian employees review mail for a variety of characteristics to determine whether it qualifies as "suspicious" -- *i.e.*, correspondence that did not come from a consumer (*id.* at ¶¶ 30, 31; Ex. 8). Consumer support associates then review and process suspicious mail according to additional procedures (*id.* at ¶ 32; Ex. 9). Based on that policy, Experian responded to the Go Clean letter,

explaining that it suspected the dispute letter was not from Turner (*id.* at ¶ 25). This response instructed Turner to contact Experian by phone or online if she wished to dispute information on her credit report (*id.* at ¶ 26):

> We received a suspicious request in the mail regarding your personal credit report and determined that it was not sent by you. Suspicious requests are reviewed by Experian security personnel who work regularly with law enforcement officials and regulatory agencies to identify fraudulent and deceptive correspondence purporting to originate from consumers.
>
> In an effort to safeguard your personal credit information from fraud, we will not be initiating any disputes based on the suspicious correspondence. Experian will apply this same policy to any future suspicious requests that we receive regarding your personal credit information, but we will not send additional notices to you of suspicious correspondence.
>
> If you believe that information in your personal credit report is inaccurate or incomplete, please visit our website at experian.com/validatedispute or call us at (855) 435-9429 to speak directly to an Experian consumer assistance representative.

Turner did not contact Experian and instead filed suit (*id.* at ¶ 28). Her alleged damages are limited to emotional distress (*id.* at ¶ 62).

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute as to any material fact," such that the moving party "is entitled to judgment as a matter of law." Federal Civil Rule 56(a). This Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This Court does not weigh the evidence or determine the truth of any matter in dispute; rather, this Court evaluates only whether the record contains sufficient concrete, affirmative evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986). "The fact that the parties have filed cross-motions for summary judgment does not mean, of

course, that summary judgment for one side or the other is necessarily appropriate." *Appoloni v. United States*, 450 F.3d 185, 189 (6th Cir. 2006) (quoting *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003)). This Court "evaluate[s] each motion on its own merits." *Id.* (quoting *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003)).

## DISCUSSION

Turner asserts two claims under FCRA. First, she claims Experian failed to maintain reasonable procedures to assure maximum possible accuracy of the information in its credit reports. 15 U.S.C. § 1681e(b). Second, she claims Experian failed to conduct a reasonable reinvestigation upon receiving notice that she disputed the accuracy of information in her credit report. 15 U.S.C. § 1681i. This Court addresses each of these claims in turn.

### Turner's Section 1681e(b) claim fails.

To prevail on a claim under Section 1681e(b), a plaintiff must show that "(1) the defendant reported inaccurate information about the plaintiff; (2) the defendant either negligently or willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information about the plaintiff; (3) the plaintiff was injured; and (4) the defendant's conduct was the proximate cause of the plaintiff's injury." *Nelski v. Trans Union, LLC.*, 86 F. App'x. 840, 844 (6th Cir. 2004). Based on the undisputed facts, and drawing all inferences in her favor, Turner is unable to establish any of the four required elements.

#### *Experian did not report inaccurate information.*

The eight alleged inaccuracies in the Complaint (Doc. 1-1 at ¶ 5) differ from those identified in Turner's Motion (Doc. 28). The parties now agree that two of those accounts, Chase and Comenity Bank, were accurate (*id.* at ¶ 36). A third account, the Chase Auto loan, is also accurate. Though

Turner claims Experian improperly reported "obsolete information," FCRA allows CRAs to include negative information on a credit report for up to seven years. 15 U.S.C. § 1681c(a). Since the late payment on the auto loan occurred in July 2009, it was not obsolete when Experian reported it in June 2015.

Turner alleges Experian inaccurately reported late payments on three of the remaining accounts: Bank of the West, Macy's, and Kohl's (Doc. 1-1 at ¶ 6). Experian offers evidence that between July and December 2015, Trans Union, Equifax, and/or Experian reinvestigated the Bank of the West account fifteen times, the Macy's account six times, and the Kohl's account six times (Doc. 30-2 at ¶¶ 23–37). Each time, the furnishers confirmed the accuracy of the late payments as reported (*id.*). Similarly, Turner initially claimed that she did not "recognize" the two Capital One credit cards listed on her credit report (Doc. 1-1 at ¶ 5). She later testified that the accounts were hers, but that she did not recall making any late payments (Doc. 21 at ¶¶ 53, 55). Experian offers evidence that it reinvestigated both Capital One accounts three times between October and December 2015 (Doc. 30-2 at ¶¶ 42–47). Each time, the furnisher confirmed the accuracy of the late payments as reported (*id.*).

Turner offers no evidence suggesting these reports were inaccurate, beyond her testimony that she did not "recall" or "believe" that she made any late payments (Doc. 21 at ¶¶ 39, 53). This is not the type of "concrete" and "affirmative" evidence required to survive summary judgment. *Anderson*, 477 U.S. at 256–57; *see also Ondo v. City of Cleveland*, 795 F.3d 597, 604–05 (6th Cir. 2015) ("[A]llegations [that] 'go beyond [plaintiff's] personal knowledge and extend to matters within [plaintiff's] belief,' . . . cannot be regarded as evidence giving rise to a genuine issue of material fact

under Federal Rule of Civil Procedure 56 to defeat summary judgment.") (quoting *Totman v. Louisville Jefferson Cty. Metro Gov't*, 391 F. App'x 454, 464 (6th Cir. 2010)).

Moreover, Turner does not address Experian's arguments about the accuracy of the Bank of the West, Macy's, Kohl's, or Capital One late payment reports in her briefs on summary judgment (*see* Docs. 28, 31). Therefore, this Court considers any argument about the accuracy of the reported late payments to be abandoned. *See Clark v. City of Dublin*, 178 F. App'x 522, 524–25 (6th Cir. 2006) (plaintiff abandoned ADEA and ADA claims by failing to properly respond to arguments raised in summary judgment motion); *Bauer v. Cty. of Saginaw*, 111 F. Supp. 3d 767, 782 (E.D. Mich. 2015), *aff'd sub nom. Bauer v. Saginaw Cty.*, 641 F. App'x 510 (6th Cir. 2016) ("Generally, a party may abandon claims by failing to address or support them in a response to a motion for summary judgment.")

Instead, Turner's Motion for Summary Judgment alleges two new inaccuracies related to the Bank of the West account. First, she disputes the use of "ND" (no data) code in her payment history for the month of September 2015, arguing that the account should be listed as "OK" for that month because her subsequent payment history shows she was current on the account (Doc. 28 at 17–19). Second, on the same trade line, she claims Experian inaccurately reported the date of the "first report" of the account status as November 2013, when the account was not opened until December 2013 (*id.* at 17). These are not cognizable inaccuracies under FCRA and Sixth Circuit precedent.

The Sixth Circuit applies a "technical accuracy" standard for FCRA claims. *Dickens v. Trans Union Corps.*, 18 F. App'x 315, 318 (6th Cir. 2001); *Garrett v. Trans Union*, 2006 WL 2850499, at \*10 (S.D. Ohio 2006); *see also Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991) (describing different standards for accuracy under FCRA). Under this standard,

information is accurate if it is factually correct, even if it could be "misleading or incomplete in some respect." *Dickens*, 18 F. App'x at 318. Whether information is factually correct is viewed from the perspective of a creditor, not a lay person. *Id*; *Elsady v. Rapid Glob. Bus. Sols., Inc.*, 2010 WL 2740154, at \*7 (E.D. Mich. 2010). "A consumer's conclusory allegation that a report is misleading is insufficient[.]" *Shaw v. Equifax Info. Sols., Inc.*, 204 F. Supp. 3d 956, 960 (E.D. Mich. 2016).

The *Dickens* case offers a helpful example of technical inaccuracy. Dickens was a co-signer on a loan which was incorporated into his daughter's bankruptcy. Dickens alleged that the "included in bankruptcy" comment on the loan was misleading because *he* did not file for bankruptcy. However, the Sixth Circuit concluded the information was technically accurate because the loan was included in *a* bankruptcy proceeding, and it was not misleading because the bank understood it was not Dickens' bankruptcy. *Dickens*, 18 F. App'x at 318.

Like *Dickens*, the reporting of "ND" for "no data" is not inaccurate under Section 1681e(b) because it is factually correct, even if Turner believes it is misleading. Thus, the only remaining potential inaccuracy in Turner's credit report is the one-month discrepancy between the "account opened" and "first reported" dates on the Bank of the West account summary. As Turner notes, this is unusual and likely incorrect because activity should not be reported on an unopened account. But Experian presents unrefuted evidence (*see* Doc. 30-2 at ¶ 13, 25–29; Exs. K & M) that it accurately reported the information furnished by Bank of the West. That is sufficient to satisfy its obligation under FCRA. *See Dickens*, 18 F. App'x at 318 ("Trans Union's report accurately reflected the information provided by the lender . . ."). Moreover, even if this one-month discrepancy were considered a technical inaccuracy, Turner fails to establish the remaining elements for a violation under Section 1681e(b).

### *Experian followed reasonable procedures to assure accuracy.*

"FCRA does not impose strict liability for incorrect information appearing on an agency's credit reports." *Nelski*, 86 F. App'x at 844. Liability arises only when a CRA additionally fails "to follow (1) reasonable procedures (2) to assure maximum possible accuracy of the information (3) concerning the individual about whom the information relates." *Bryant v. TRW. Inc.*, 689 F.2d 72, 78 (6th Cir. 1982).

The reasonableness of a CRA's procedures is normally a question of fact for the jury, unless the reasonableness or unreasonableness is "beyond question." *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004). The standard for determining whether a CRA uses adequate procedures is what a "reasonably prudent person" would do under the circumstances. *Bryant*, 689 F.2d at 78. At a minimum, a plaintiff must produce facts upon which a court could infer the procedures were unreasonable. "Generally, a plaintiff need not point to specific deficiencies in an agency's practices or procedures," *Nelski*, 86 F. App'x at 845, but "[u]nsubstantiated speculation is not enough to create a genuine issue of material fact." *Id.* at 846 (reasoning that a lack of evidence and mere speculation about unreasonable procedures was insufficient to survive summary judgment).

The purpose behind requiring reasonable procedures is to ensure the "confidentiality, accuracy, relevancy, and proper utilization" of consumer credit information. 15 U.S.C. § 1681(b). "Thus, the FCRA is aimed at protecting consumers from inaccurate information in consumer reports and at the establishment of credit reporting procedures that utilize correct, relevant, and up-to-date information in a confidential and responsible manner." *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998).

For example, in *Birmingham v. Experian Info. Sols., Inc.*, 633 F.3d 1006, 1012 (10th Cir. 2011), the court held Experian's procedure for confirming a consumer's identity was reasonable: "Experian's response in July was appropriate; it asked for additional identifying information to be sure it was being contacted by the consumer himself." Similarly, in *Anderson v. Trans Union*, 405 F. Supp. 2d 977, 984 (W.D. Wis. 2005), the court held Trans Union's procedure for confirming a consumer's social security number was a reasonable method for "insur[ing] both the accuracy *and* confidentiality of plaintiff's credit information." In contrast, in *Smith v. LexisNexis*, 837 F.3d 604 (6th Cir. 2016), the Sixth Circuit held the CRA's procedure was unreasonable because the CRA did *not* ask for additional information (like a middle name) to maintain accurate records for the common name "David Smith."

Turner claims Experian's suspicious mail policy is unreasonable and does not assure maximum possible accuracy because it is "certain to result in reporting errors based on the sheer number of letters Experian sends regarding suspicious mail" (Doc. 28 at 23). As in *Nelski*, this inference might be sufficient to survive summary judgment if it were supported by some evidence. But Turner cites no facts in support of this bald conclusion. *See Nelski*, 86 F. App'x at 846 ("Unsubstantiated speculation is not enough to create a genuine issue of material fact on which a jury could reasonable find for Nelski.").

Further, it is not clear how a policy that asks a consumer to personally contact a CRA is an unreasonable procedure that *causes* inaccurate information. Section 1681e(b) requires a CRA to follow reasonable procedures "[w]henever [it] prepares a consumer report." But Experian's suspicious mail policy comes into play *after* a report is issued. In short, Turner's argument on this point does not comfortably fit within the "reasonable procedure" prong of a Section 1681e(b) claim.

9

Nevertheless, based on the undisputed facts, this Court find Experian's suspicious mail policy is reasonable because Experian has a duty not only to maintain accurate consumer credit information, but also to ensure the confidentiality of that information. Here, Experian asked Turner to contact it directly if she wanted to dispute the accuracy of her credit report because it was unclear whether she had authorized the letter sent by Go Clean Credit. Like the procedures reviewed in *Birmingham* and *Anderson*, Experian's suspicious mail policy aims to confirm the identity of the person contacting it. This is in keeping with FCRA's purpose, requiring CRAs to maintain the "confidentiality, accuracy, relevancy, and proper utilization" of consumer information. Because this Court finds Experian's policy is reasonable, it does not address the parties' remaining arguments regarding negligence or willfulness.

### *There is no evidence Experian's credit report proximately caused any alleged injury.*

Turner concedes her damages are limited to emotional distress (Doc. 21 at ¶ 62). To recover damages based on emotional distress, Turner must "allege more than 'mere conclusory statements' and must 'reasonably and sufficiently explain the circumstances' surrounding [her] emotional injuries." *Smith*, 837 F.3d at 611 (quoting *Bach v. First Union Nat'l Bank*, 149 F. App'x. 354, 361 (6th Cir.2005)). She must also show that her emotional distress was proximately caused by inaccurate information reported by Experian. *Garrett*, 2006 WL 2850499, at *11.

Turner testified that a mortgage broker advised her in early 2015 -- several months before the July 2015 dispute letter that forms the basis for this lawsuit -- that it would be "challenging" for her to obtain a mortgage. Turner claims this conversation caused her great embarrassment and "left [her and her husband] living in a home in a higher risk area" (Doc. 21-1 at 29). She also claims she suffered physical effects from her distress, including insomnia, weight gain, shingles, hives, and

missed work (*id.* at 30). In support of her claims, Turner cites her own testimony and what appear to be photos of hives on her arm and leg (*see* Doc. 28 at 27; Ex. Q).

To be recoverable under FCRA, emotional distress must be caused by an inaccuracy in a credit report. But as the Supreme Court has recognized, "not all inaccuracies cause harm or present any material risk of harm." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016) ("An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm."). Thus, even if the one-month discrepancy on the Bank of the West account could be considered a technical inaccuracy, as discussed above, Turner offers no argument, let alone evidence, suggesting this information harmed her credit. Further, Turner cites no evidence suggesting the unnamed mortgage broker ever reviewed her Experian credit report, nor does she explain how or why this conversation forced her and her husband to continue living in an unsafe area. Moreover, Turner and her husband ultimately applied and were approved for a home loan (Doc. 21-1 at 28). In short, Turner fails to offer evidence upon which a jury could conclude that an inaccuracy on her credit report proximately caused her emotional distress.

**Turner's Section 1681i claim also fails.**

Section 1681i provides that "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate . . . ." 15 U.S.C. § 1681i(a)(1)(A). Turner claims Experian violated Section 1681i by refusing to reinvestigate her credit report after receiving the dispute letter sent on her behalf by Go Clean Credit.

### *Experian did not report inaccurate information.*

Some inaccuracy may be required for a Section 1681i claim. *See Dickens*, 18 F. App'x at 318– 19 ("Although a showing of inaccuracy is an essential element of a § 1681e(b) claim . . . it is unclear whether a showing of inaccuracy is required for § 1681i liability . . . .") (citations omitted). This is because "damages would be almost impossible to prove without [an inaccuracy]." *Salei v. Am. Express Travel Related Servs. Co., Inc.*, 1997 WL 809956, at *3 (6th Cir. 1997) (unpublished table decision).

Some courts hold that an inaccuracy is required for claims under both this Section and Section 1681e(b). "[T]he weight of authority in other circuits indicates that without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail." *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008). *See also Wright v. Experian Info. Solutions, Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015); *Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876, 890 (9th Cir. 2010); *Keuhling v. Trans Union, LLC*, 137 F. App'x 904, 908 (7th Cir. 2005*)*; *Cahlin v. General Motors Acceptance Corps.*, 936 F.2d 1151, 1160 (11th Cir. 1991); *Fried v. Experian Info. Solutions, Inc.*, 2015 WL 5591117, at *2 (E.D. Mich. 2015) ("Accurate reporting cannot give rise to a FCRA claim.").

This Court finds that an inaccuracy is a required element of a Section 1681i claim. Here, this claim fails because there is no evidence that the derogatory accounts that Go Clean Credit disputed on Turner's behalf were in fact inaccurate. Moreover, even if an inaccuracy were not required, Turner has failed to present any evidence of damages. *See Salei*, 1997 WlL 809956, at *3.

### *Turner did not dispute the alleged inaccuracies "directly."*

Section 1681i requires a CRA to conduct a reasonable reinvestigation when a consumer notifies the CRA "directly" that she disputes the accuracy of information included in her credit report. 15 U.S.C. § 1681i(a)(1)(A). The meaning of the term "directly" has been interpreted by the Federal Trade Commission (FTC) and various court decisions.

The Sixth Circuit and the Supreme Court acknowledge a degree of deference to agencies in interpreting the statutes they are charged with administering. *Wolpaw v. C.I.R.,* 47 F.3d 787, 790 (6th Cir. 1995). The FTC, which oversaw FCRA until it was brought under the wing of the Consumer Financial Protection Bureau (CFPB), interpreted Section 1681i as follows:

> A CRA need not investigate a dispute about a consumer's file raised by a third party - such as a 'credit repair organization' denned [sic] in 15 U.S.C. § 1679a(3) - because the obligation under this section arises only where file information is disputed 'by the consumer' who notifies the agency 'directly' of such dispute.

"40 Years of Experience with the Fair Credit Reporting Act," 2011 FTC Staff Report, 2011 WL 3020575, at *70. While not formal regulations entitled to *Chevron* deference, the FTC's guidelines are nevertheless persuasive authority. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 (2007) (describing FTC interpretation of FCRA as "authoritative guidance"). And though FCRA now falls within the ambit of the CFPB, the 2011 FTC staff report was created to help guide the CFPB in exercising its new authority. Report, 2011 WL 3020575, at *5. There is no evidence that the CFPB has interpreted Section 1681i any differently than the FTC.

Turner, however, argues this Court should extend the CFPB's interpretation of the term "directly" under Section 1681s-2 -- as it relates to *furnishers* of information -- to Section 1681i (Doc. 31 at 10). First, she notes that for purposes of Section 1681s-2, the CFPB defines "direct dispute" as "a dispute submitted directly *to* a furnisher." 12 C.F.R. § 1022.41(b) (emphasis added). But that

same regulation also requires the dispute to be submitted *by* a consumer. *Id.* ("Direct dispute means a dispute submitted directly to a furnisher . . . by a consumer . . . ."). Second, she notes that Section 1681s-2(8)(G) specifically exempts furnishers from a duty to investigate any notice of dispute submitted or prepared on behalf of the consumer by a CRO. Turner contends that the absence of any equivalent provision in Section 1681i means that CRAs are required to reinvestigate disputes submitted to them by CROs on behalf of consumers. Finally, Turner quotes the Credit Repair Organization Act, which recognized that "[c]onsumers have a vital interest in establishing and maintaining their credit worthiness," and therefore "consumers who have experienced credit problems may seek assistance from credit repair organizations . . . ." 15 U.S.C. § 1679(a)(1). Turner suggests that viewed together, these authorities affirmatively permit CROs to prepare and submit disputes to CRAs on behalf of consumers.

The Credit Repair Organization Act, however, was enacted to "protect the public from unfair or deceptive advertising and business practices by credit repair organizations." 15 U.S.C. § 1679(b)(2). Contrary to Turner's suggestion, this statute is hardly an affirmative endorsement of CROs as consumer agents. Further, case law supports Experian's position that under Section 1681i, "directly" means that the dispute is brought by an individual consumer and not by a third party. *See, e.g.*, *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 833 (E.D.N.Y. 1994) ("FCRA requires that the information be conveyed *by the consumer* directly to the credit reporting agency") (emphasis in original); *Wiggins v. Equifax Servs., Inc.*, 848 F. Supp. 213, 220 (D.D.C. 1993) ("It is also disputed whether Mr. Wiggins, in fact, complained about the accuracy of the report directly to ESI, a requirement for liability under § 1681i(a)."). Likewise, in *A-1 Credit & Assurance Co., Inc. v. Trans Union Credit Info. Co.,* 678 F. Supp. 1147, 1151 (E.D. Pa. 1988), the district court held that

a CRA -- to protect itself against claims of improper disclosure -- was not required to disclose credit information to a CRO. Thus, the CRA did not have to recognize a CRO as a consumer's agent.

Turner does not cite, nor has this Court found, a case that affirmatively allows a CRO to notify CRAs of disputes on behalf of consumers. In fact, at least one court has gone even further, holding that a dispute is not brought directly by a consumer unless the consumer is actively involved in preparing the letter. In *Klotz v. Trans Union, LLC*, 2008 WL 2758445, at *2 (E.D. Pa. 2008), the plaintiff actually mailed the dispute letter to the CRA. But the court held he failed to meet the "threshold requirement" for a Section 1681i claim because he "had virtually nothing to do with the disputes that he sent in." *Id.* at *5. The court also held, however, that this is a fact-specific determination and left open the possibility that a consumer might "directly" dispute a credit report if she "use[d] a CRO to find problems with her credit report, review[ed] the documents and check[ed] them for accuracy, [made] any necessary changes, and [sent] them to a CRA." *Id.*

None of this authority helps Turner's case. Not only did Go Clean Credit send the dispute letter on Turner's behalf, but she also admits her involvement in preparing the dispute was limited to a single telephone conversation, during which a Go Clean Credit representative conducted an "initial credit consultation" (Doc. 21 at ¶¶ 8–9). She did not draft the dispute letter, provide documentation supporting its claims, review its accuracy, sign it, or mail it (*id.* at ¶¶ 14, 16, 22). Thus, this Court cannot conclude that Turner "directly" notified Experian of her dispute, under any reasonable interpretation of the term.

## CONCLUSION

This case presents two somewhat technical statutory interpretation questions of first impression in the Sixth Circuit -- namely, whether an inaccuracy is required for a claim under 15

15

U.S.C. § 1681i, and whether CROs may act as consumer agents in notifying CRAs of disputed credit information. Bottom line -- the purpose of FCRA is to protect consumers from false information and hold CRAs accountable for the accuracy of their reports. Based on the undisputed facts, this Court concludes that there was nothing wrong with either Turner's credit report or Experian's procedures, and thus Turner has suffered no injury. This Court grants Experian's Motion for Summary Judgment (Doc. 30) and denies Turner's Motion for Summary Judgment (Doc. 28).

IT IS SO ORDERED.

                                                            s/ *Jack Zouhary*
                                                         JACK ZOUHARY
                                                         U. S. DISTRICT JUDGE

                                                         June 30, 2017